# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:10cv141

| | |
|---|---|
| RICHARD L. INGLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 10] and the Defendant's Motion for Summary Judgment. [Doc. 14].

## I. PROCEDURAL HISTORY

The Plaintiff Richard Ingle filed an application for Supplemental Security Income on August 18, 2004, alleging that he had become disabled as of January 1, 2002. [Transcript ("T.") 61]. The Plaintiff's application was denied initially and on reconsideration. [T. 46-51, 53-54]. A hearing was held before Administrative Law Judge ("ALJ") Todd Jacobson on May 14, 2007. [T. 708-45]. On October 10, 2007, the ALJ issued a decision denying the Plaintiff

benefits. [T. 26 -37]. The Appeals Council accepted additional evidence, but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 13-16]. The Plaintiff has exhausted his available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means

2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III.   THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's

3

physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

**IV.   THE ALJ'S DECISION**

On October 10, 2007, the ALJ issued a decision denying the Plaintiff benefits. [T. 26-37]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff had not engaged in substantial gainful activity from the application date of August 26, 2004. [T. 31]. The ALJ then determined that Plaintiff's bipolar disorder and obesity were severe impairments. [T. 31]. The

4

ALJ concluded that the Plaintiff's impairments did not meet or equal a listing. [T. 32]. He then determined that Plaintiff retained the residual functional capacity to perform medium simple, routine repetitive work at a non-production pace with limited personal interaction with others. [T. 33]. He found that Plaintiff had no past relevant work, but that considering his age, limited education, work experience, and residual functional capacity, jobs existed in significant numbers in the national economy that Plaintiff could perform. [T. 35]. Accordingly, he concluded that the Plaintiff was not disabled from the date of his application, August 26, 2004, through the date of his decision. [T. 36].

## V. DISCUSSION

Plaintiff asserts five assignments of error on appeal. Specifically, he contends that: (1) the ALJ erred in failing to consider the testimony and opinion of Vonda Burton, a psycho-social rehabilitation director, who testified at Plaintiff's ALJ hearing; (2) the ALJ erred in failing to analyze properly Plaintiff's mental RFC; (3) the ALJ's RFC assessment failed to comply with SSR 96-8p in that he failed to include a function-by-function analysis; (4) the ALJ erred in evaluating the severity of Plaintiff's obesity; and (5) the ALJ erred

5

in evaluating Plaintiff's subjective complaints and in assessing his credibility. For the reasons discussed below, the Court concludes that the ALJ erred in his evaluation of Ms. Burton's testimony. Accordingly, this matter will be remanded for further administrative proceedings.

Vonda Burton is the director of Piedmont Pioneer House, Inc. (Piedmont), a psycho-social rehabilitation facility. Though Piedmont does not provide mental health counseling or psychiatry services, it does assist individuals in developing the social and interpersonal skills necessary to function in the workplace. [T. 709, 711].

Ms. Burton testified that she is certified as a Qualified Mental Health Professional and a Qualified Disability Development Professional. She explained that a combination of a bachelor's degree in psychology or sociology and at least two years of experience in mental health treatment were required for such certifications. Ms. Burton testified that she has more than eleven years' experience in the mental health field and three years' experience in the field of developmental disabilities. [T. 717].

Ms. Burton testified Plaintiff had been coming to Piedmont for six to seven hours every day for the past two years. [T. 712]. She saw Plaintiff on a daily basis during this time. [T. 713]. She described the various goals

6

established for the Plaintiff at Piedmont, which included improving his interpersonal skills, hygiene and medication usage, as well as his activities of daily living. [T. 714]. Ms. Burton testified that Plaintiff spends his time at the facility on the computer writing poetry, having lunch with friends, and occasionally helping out answering phones. [T. 713-14]. Ms. Burton testified that she was required to respond to physical and verbal conflicts between Plaintiff and other clients on a daily basis. [T. 713]. She reported that he had been suspended from the program three times for various infractions, including inappropriate behavior toward other clients, horseplay and possession of knives. [T. 718-19]. She stated that Plaintiff was most recently suspended from the program three or four weeks prior to the hearing after a two-day period of "very manic" behavior. Plaintiff was hospitalized as a result of this incident and his medications were adjusted. [T. 720].

Ms. Burton testified that Piedmont has a transitional employment program to place clients like the Plaintiff in non-competitive jobs, but that they had not been able to place Plaintiff because "he's still working on lots of social skills, anger issues, interpersonal skills. He has too many conflicts." [T. 715]. When asked whether she thought Plaintiff could perform a job that did not require much interaction with others but did require that work be done at a

7

steady pace, Ms. Burton responded: "no, I think he would get distracted and not be able to complete the task. He's not shown lots of concentration skills where he can do something like that all day long." [Id.]. Based on her observations of him at Piedmont, Ms. Burton opined that Plaintiff's greatest challenge in the workplace would be in interacting appropriately with others. [T. 716].

In all, Ms. Burton provided extensive testimony at the ALJ hearing, covering fifteen pages of the transcript. [T. 709-23]. In addition, Plaintiff submitted over 200 pages of treatment records from Piedmont, which were admitted into evidence as Exhibits 18F and 23F. [T. 245-410 (exhibit 18F), 542-605 (exhibit 23F)]. The ALJ's decision, however, indicates that he reviewed only part of these records. [See T. 34 (citing only Exhibit 23F)]. With respect to Ms. Burton's testimony, the ALJ noted in his decision only that Ms. Burton testified that she had seen Plaintiff daily for two years; that Plaintiff had problems every day; that on some days, Plaintiff was on the computer and writing poetry; and that they were trying to assist Plaintiff with personal hygiene, daily living skills, and social skills. [Id.]. The ALJ made no reference, however, to Ms. Burton's opinions regarding Plaintiff's functioning or his ability to perform work-related tasks.

8

The ALJ has a duty to consider all of the evidence available in a claimant's case record, include such evidence provided from "other" non-medical sources:

> In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 C.F.R. 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:
>
> - Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists; and
>
> - "Non-medical Sources" including, but not limited to:
>
> - Educational personnel, such as school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers;
>
> - Public and private social welfare agency personnel, rehabilitation counselors; and
>
> - Spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers.

SSR 06-03p; see also 20 C.F.R. §§ 404.1513(d) and 416.913(d). While evidence from "other sources" cannot be used to establish the existence of a medically determinable impairment, such sources may provide evidence,

including opinion testimony, regarding the severity of the claimant's impairments and such impairment affect the individual's ability to function. <u>Id.</u>

In the present case, Ms. Burton testified that she is certified as a Qualified Mental Health Professional and a Qualified Disability Development Professional. She explained that a combination of a bachelor's degree in psychology or sociology and two years of experience were required for these certifications, and that she herself had eleven years' experience in mental health and three years' experience in developmental disabilities. Such credentials bear enough similarity to the "licensed clinical social worker" and "rehabilitation counselor" examples of the "other sources" cited above to merit consideration of her opinions pursuant to SSR 06-03p. Notwithstanding these credentials, the ALJ's opinion derives only four factual points from Ms. Burton's testimony. [T. 33]. Additionally, it appears that the ALJ considered only those records contained in exhibit 23F, which address only nine months out of the two years Plaintiff was at the Piedmont facility. [T. 34]. Such minimal treatment of a line of evidence that comprises nearly half the hearing testimony and 200 pages of the record, is unreasonable and impermissible. See <u>Diaz v. Chater</u>, 55 F.3d 300, 307 (7th Cir.1995) ("[a]n ALJ's failure to

consider an entire line of evidence falls below the minimal level of articulation required" by the Social Security Act). A remand is therefore required.

In light of this decision, Plaintiff's other assignments of error need not be addressed, but he is free to raise them upon remand.

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **GRANTED** to the extent that the Plaintiff seeks reversal of the Commissioner's decision denying him disability benefits. To any extent that the Plaintiff seeks an immediate award of benefits, the Plaintiff's Motion [Doc. 10] is **DENIED**.

Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this case is hereby **REMANDED** to the Commissioner for further administrative action consistent herewith.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 14] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: November 4, 2011

Martin Reidinger
United States District Judge